No. 30,518.

OTIS FARMER, *Appellee,* v. R. R. RUTHERFORD (CENTRAL WEST CASUALTY COMPANY, *Appellant*).

(15 P. 2d 474.)

Opinion filed November 5, 1932.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove* and *Balfour S. Jeffrey,* all of Topeka, for the appellant.

*Oscar E. Learnard,* of Lawrence, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover damages from the sheriff of Douglas county, and his bondsmen, for an assault upon the plaintiff. A demurrer was filed to the petition which was overruled. The defendant, the Central West Casualty Company, appeals.

The petition alleges that R. R. Rutherford was, on November 6, 1928, duly elected to the office of sheriff of Douglas county; that the Central West Casualty Company on January 3, 1929, executed a sheriff's bond, which was duly approved by the board of county commissioners of Douglas county and filed with the county clerk. A copy of the bond is attached to the petition. The petition further alleges:

"Plaintiff further states, that, on or about the 28th day of January, 1930, while he was peaceably asleep in his own home, he was arrested by the defendant, R. R. Rutherford, and his undersheriff and his deputies, and was taken to the county jail of Douglas county, Kansas, at Lawrence, Kan., and was then and there incarcerated; that while he was confined in said county jail and in the care and custody of the said R. R. Rutherford as sheriff of said county, he was taken from the cell block of said jail and into a separate cell, and while in said cell and in the care and custody of the said Rutherford, he was assaulted without just cause or reason by the said Rutherford, and was struck in the face and on the head by the defendant R. R. Rutherford; that the said Rutherford had a ring upon one of his fingers and doubled his fist and struck this plaintiff, who was severely injured and his face was cut and caused to bleed; that after this occurrence he was taken back to the 'cage' or interior of the jail.

"Plaintiff further states that, later on in the morning of this, the 28th day of January, 1930, he was taken from the cage or cell block into the same separate cell above referred to, this time by George O. Reed, deputy sheriff, and Houston Turner, deputy sheriff; that while in said room or cell the said Reed and Turner attempted to compel him to confess to the stealing and killing of a certain steer, and because he insisted upon his innocence and told them that he had no knowledge of such happenings, the said Reed and Turner cursed, abused and threatened him, and the said Turner took a length of rubber hose and, while this plaintiff was seated in a chair and alone in said room with the two named officers, the said Turner beat him, the said Otis Farmer, with said hose, striking him repeatedly on the head and upon his back with powerful blows with said hose; that the said George O. Reed and Houston Turner during all of these proceedings had large guns strapped to their sides and threatened to shoot this plaintiff if he attempted to prevent their beating him.

"Plaintiff further states that, by reason of said beating as aforesaid, he was

severely injured; that both of his eyes were bruised and blacked; that one ear was swollen and black and blue; that his back and shoulders were severely beaten and were covered with black, blue and purple stripes from said hose, overlapped upon each other; that by reason of the said beatings as aforesaid this plaintiff suffered severe and painful injuries physically, and was compelled to employ a physician to treat him; that by reason of said beatings he suffered severe pain, mental shock and suffering, and great mental and physical anguish.

"Plaintiff further states that all of the assaults and beatings as above set out occurred while he was confined in the county jail of Douglas county and in the supposed care and sure custody of the defendant R. R. Rutherford, and that all of said assaults and beatings were administered without any cause or provocation."

Plaintiff prays judgment for $5,000 actual damages and for $5,000 punitive damages.

The bond attached to plaintiff's petition is as follows:

"OFFICIAL BOND—SHERIFF.

"State of Kansas, Douglas county, ss.

"Know all men by these presents, That we, R. R. Rutherford, as principal, and Central West Casualty Company, a Michigan corporation of Detroit, Michigan, as his sureties, are indebted, held and firmly bound unto the state of Kansas in the sum of ten thousand and no/100 dollars, which we hereby bind ourselves to pay; but, however, upon this express condition, to wit:

"That, whereas, the above bounded R. R. Rutherford was elected to the office of county sheriff of said county, on the 6th day of November, A. D. 1928.

"Now, therefore, the condition of this obligation is such, that if the said R. R. Rutherford and his deputies shall pay, according to law, all moneys which shall come to his hands as sheriff, and will render a just and true account thereof, whenever required by the board of county commissioners of said county, or by any provision of law, and shall deliver over to his successors in office, or to any other person authorized by law to receive the same, all moneys, books, papers and other things appertaining thereto or belonging to his said office, then the above obligation to be void, otherwise to be in full force and effect.

"The above-named sureties are to be, respectively, liable upon this obligation only to the extent of the amount set opposite their respective signatures below, as provided by the act of the legislature of the state of Kansas, entitled 'An act fixing the liability of the sureties on official bonds,' approved March —, 1891.

"(Seal)

"Witness our hands this 3d day of December, A. D. 1928.

"Central West Casualty Company, by Gustave, attorney-in-fact, —— dollars.

"Approved by the board of county commissioners of said county this 9th day of January, A. D. 1929.

"Attest: ——, county clerk.                     G. E. KRETSIGNER, Chairman.

"OFFICIAL OATH.

"State of Kansas, Douglas county, ss.

"I do solemnly swear that I will support the constitution of the United States and the constitution of the state of Kansas, and faithfully discharge the duties of the office of county sheriff. So help me God.

"(Seal) (Signed) R. R. RUTHERFORD.

"Subscribed and sworn to before me this 10th day of December, A. D. 1928.

C. O. BOWMAN, *County Clerk.*"

The court overruled appellant's demurrer to the petition, and this order is here for review.

The appellant presents three questions: First, that the liability of the surety is measured by the bond. Second, that the statutory conditions do not impose a liability on the surety for the alleged acts of the sheriff. Third, that the appellee is seeking punitive damages from a surety.

It is suggested in the appellee's brief that the form of bond used was the one provided for the county treasurer and that where the word treasurer appeared it was stricken out and the word sheriff written in. This, of course, does not appear in the petition. It must be conceded that the bond does not meet the requirements of the statute relating to sheriff's bond. The bond attached to the petition is conditioned that the sheriff will pay according to law all moneys which come into his hands, render a full and true account thereof when required by the board of county commissioners, and deliver to his successor such moneys and records that come into his hands by virtue of his office. These are not the conditions of a sheriff's bond. R. S. 19-801 and 19-802 provide the conditions for a sheriff's bond, which may be summarized as follows:

First. Shall well and faithfully perform and execute the duties of his office without fraud, deceit or oppression.

Second. Shall pay over all moneys that may come into his hands as such sheriff.

Third. Shall deliver to his successor all records, papers, and other things pertaining to his office, which may be so required by law.

It is conceded at the outset that if the appellant may rely upon the strict condition of the written obligation executed by it, such bond has no application to the conduct of the sheriff in the handling of prisoners. We are therefore brought face to face with the question—May the statutory conditions of an official bond be read into

the bond when not included in the written instrument itself? This is not an entirely new question before this court, although the question here presented has not heretofore been passed upon by the court. The appellants contend that the cases of *General Securities Co. v. Hindes,* 119 Kan. 226, 237 Pac. 659, and *State v. Guaranty Co.,* 81 Kan. 660, 106 Pac. 1040, are decisive of this question, and that the court in deciding these cases rejected the theory that the obligors in a statutory bond are presumed to have known the terms of the statute and bound themselves in reference thereto.

The Hindes case was an action on a replevin bond, which did not contain the statutory conditions, and it was held that such conditions would not be read into the bond. It will be noted in the opinion that the court discusses the authorities cited with reference to official bonds, and then says:

"The rules gathered from the authorities pertaining to delivery bonds in replevin actions may be thus stated: The plaintiff is not entitled as a matter of right to have the order of delivery issued and to have the sheriff take possession of the property and deliver it to him, to be held pending the action, unless he gives a replevin bond in the form and conditioned and with sureties as required by the statute. The sheriff has no authority to take the property from the defendant and deliver it to plaintiff, to be held by him pending the action, unless such a bond has been given by plaintiff, and if he does take the property when such bond has not been given he may become liable to the defendant. When a replevin bond has been given by plaintiff and the sheriff has taken possession of the property, the defendant is not entitled as a matter of right to have the property redelivered to him and to retain it pending the action unless he gives a redelivery bond in the form and conditioned and with sureties as required by the statute, and if the sheriff delivers the property to defendant when such a bond has not been given he may become liable to the plaintiff." (p. 230.)

It is also suggested in the opinion that if the bond does not meet the requirement of the statute that the defendant has the right to require a new or additional bond. This is not open to one dealing with a public official. He must deal with the officer. He cannot question the bond given by such officer. The distinction between an official bond and a replevin bond is clear, and the conclusion reached by the court in the case cited is not applicable to an official bond.

The case of *State v. Guaranty Co.,* supra, was an action on a bond under the depository law then in force. The bond did not contain all of the conditions of the statute. The court said:

"The bond in question, if not in strict compliance with the statute, has all the elements and binding force of a common-law obligation, and, the bank

having by means of the bond secured possession of the state funds, neither it nor the surety can escape liability for nonperformance of the conditions of the bond." (Syl. ¶ 4.)

It was contended in the case cited that the bond was void because it did not meet the statutory requirements and the court held, as above stated, that the surety could not escape liability by reason of this fact. We do not regard this case as any authority on the question here under consideration.

The bond in question is designated "Official Bond—Sheriff." It recites, "the above bounded R. R. Rutherford was elected to the office of county sheriff." The appellant knew when it executed the bond that it was executing an official bond for one who had been elected to the office of sheriff. The bond was approved by the county commissioners and the bonded took charge of the office by virtue of such bond.

In 9 C. J. 34 it is said:

"The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it."

In the case of *Fogarty v. Davis*, 305 Mo. 288, the court approves and restates the rule adopted by the Missouri court of appeals, as follows:

" 'The general rule is that, where a contract of suretyship is entered into pursuant to a statute or to a by-law, the statute or by-law forms a part of the contract. If the law has made the instrument necessary, the parties are deemed to have had the law in contemplation when the contract was executed.' " (p. 294.)

Brandt on Suretyship and Guaranty, 3d ed., 227, says:

"It has been held that words will be read into a bond required by statute for the protection of the public whenever it is necessary to do so in order to give effect to the obvious intent of the parties."

In the case of *Long Bell Lumber Co. v. S. D. Carr Const. Co.*, 172 La. 182, the court said:

"But we see no reason for departing from the well-established rule of our own jurisprudence that in a statutory bond the statute must be read into the instrument; superadded stipulations must be disregarded and necessary obligations which have been omitted must be supplied. *John H. Murphy Iron Works v. United States F. & G. Co.,* 169 La. 163, 124 So. 768; *Minden Presbyterian Church v. Lambert,* 167 La. 719, 120 So. 61; *Miller v. Bonner,* 163 La. 342, 111 So. 776; *Davis v. West Louisiana Bank,* 155 La. 245, 99 So. 207; Id., 155 La. 252, 99 So. 210." (p. 187.)

Other cases in which the courts have adopted and applied this principle of law are as follows: *New Britain Lumber Co. v. American Surety Co.,* 113 Conn. 1; *Estate of Ramsay v. The People,* 197 Ill. 572; *United States Fidelity & Guaranty Co. v. Fultz,* 76 Ark. 410; *Crawford v. Ozark Ins. Co.,* 97 Ark. 549; *Dowiat v. The People,* 193 Ill. 264; *Zellars v. Surety Co.,* 210 Mo. 86.

The appellant is a compensated surety, and the rule is well established in this court that a bond will be construed favorably to the bonded, if such construction is consistent with the object for which the bond was made. (*State v. Construction Co.,* 91 Kan. 74, 136 Pac. 905; *Bank v. Colton,* 102 Kan. 365, 170 Pac. 992; *Centerville State Bank v. National Surety Co.,* 134 Kan. 858, 8 P. 2d 361.)

It was clearly the intent of the surety in this case to execute an official bond for the duly elected sheriff of Douglas county, and under such circumstances it must be held to have included in such bond the conditions required by the statute. In construing the bond the court will read into it the statutory conditions and hold that it was the sheriff's official bond. This conclusion is well supported by authority, and sound reasoning dictates that one dealing with a public officer has the right to assume that such officer has qualified for his office in accordance with the requirements of the statute.

It is next contended that the statutory conditions do not impose a liability on the appellant for the alleged acts of the officer. One of the conditions required is that the sheriff shall well and faithfully perform and execute the duties of his office without fraud, deceit or oppression. What duty is it that the sheriff must faithfully perform without oppression in relation to prisoners in his charge? These duties are defined by statute. It is the duty of the board of county commissioners in each county to establish and keep at the county seat a jail for the safe-keeping of prisoners lawfully committed. (R. S. 19-1901.) The sheriff is the keeper of the jail, and "shall be responsible for the manner in which the same is kept." (R. S. 19-1903.) "All prisoners shall be treated with humanity, and in a

manner calculated to promote their reformation." (R. S. 19-1919.) It is the duty of the sheriff to keep and preserve the peace in his county, and to apprehend any person for felony or breach of the peace. (R. S. 19-813.) The sheriff is responsible for the acts of his deputies. (R. S. 19-805.)

It is alleged that the appellee was arrested by the sheriff and his deputy, placed in jail and requested to "confess to the stealing and killing of a certain steer," and that the sheriff and his deputy, without any cause or excuse, assaulted and abused the appellee, striking him with their fists and a rubber hose. Did this violate the official duties of the sheriff? There is no liability upon the surety unless something is done which amounts to a violation of an official duty. (*Wilson v. The State*, 67 Kan. 44, 72 Pac. 517; *Crummer v. Wilson*, 119 Kan. 68, 237 Pac. 1035; *City of Anthony v. Corbin*, 133 Kan. 337, 299 Pac. 603.)

It is clearly the duty of the sheriff to safely keep and protect all prisoners in his charge and such "prisoners shall be treated with humanity." It can hardly be argued that a sheriff is faithfully performing the duties of his office without oppression where he assaults and beats a prisoner in his charge. The abusing and beating of one suspected of crime, to wring from him a confession, is contrary to every principle of our criminal jurisprudence. Confessions thus obtained are not admissible in evidence (*State v. Kornstett, '*62 Kan. 221, 61 Pac. 805), and are of no assistance in the enforcement of the law. Such practice cannot be too severely condemned. An act done by a public officer in direct violation of a statute regulating his official duties is official misconduct within the terms of his bond. The sheriff was acting in virtue of his official duty. He violated this duty, which imposes a liability on his bondsmen.

The appellant contends that it cannot be held for punitive or exemplary damages, which the appellee seeks to recover in this case. This question is not properly raised by general demurrer. It has, however, been argued here, and, in view of the fact that it will be a question in the trial of the case, the court holds that it should state the rule. The rule is that a surety on an official bond can only be made to respond for actual or compensatory damages and is not liable for punitive or exemplary damages in the absence of a statute providing therefor. (46 C. J. 1070; 57 C. J. 1093, 1094.)

The judgment of the district court is affirmed.